2022 IL App (1st) 162344-U

No. 1-16-2344

Order filed May 24, 2022.

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 79 C 7990 |
| | ) | |
| LARRY MACK, | ) | The Honorable |
| | ) | Lawrence E. Flood, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly denied defendant leave to file a successive postconviction petition where the same claim based on the same evidence had already been raised and ruled on in his initial petition under the Act.

¶ 2    Following a bench trial in 1981, defendant Larry Mack was sentenced to death for the

first-degree murder of Joseph Kolar but subsequently received a natural life sentence. Defendant

eventually filed the present petition for leave to file a successive petition under the Post-

Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). On appeal, he asserts the trial court erred in denying him leave to file because he established both cause and prejudice with respect to his claim that trial counsel was ineffective for failing to investigate his account of events. Specifically, defendant asserts that evidence presented at his resentencing hearing corroborated his claim that he shot Kolar accidentally, not intentionally or knowingly, precluding a natural life sentence. We affirm the trial court's judgment.

¶ 3                                    I. Background

¶ 4      It is undisputed that on November 23, 1979, the then 24-year-old defendant shot and killed Kolar, a bank security guard, while defendant and his two codefendants were committing armed robbery. Defendant told police during their investigation that the shooting was accidental. The evidence at trial generally showed that during the robbery, defendant shot Kolar twice: once in the arm when Kolar tried to push the gun away, and a second time in the chest as defendant stood over him. Trial counsel, who made no opening statement or closing argument, rested without presenting evidence, and eventually filed a motion for a new trial, in which he argued his own ineffectiveness. The trial court found defendant guilty of intentional murder, knowing murder and felony murder as well as armed robbery.

¶ 5      Defendant initially received a death sentence for murder and two concurrent 25-year prison terms for armed robbery.[1] At his capital sentencing hearing, defendant had testified that he shot Kolar once, not twice, and that the shooting was accidental. Specifically, the gun discharged when Kolar grabbed it.

---

[1]Codefendants entered open guilty pleas and received prison terms. Defense counsel offered for defendant to plead guilty in exchange for a natural life prison term, but the State declined the offer after Kolar's family opposed anything other than the death penalty.

¶ 6     On direct appeal, defendant argued that trial counsel was ineffective for failing to present defendant's testimony at the first phase of his sentencing hearing and for failing to present evidence impeaching the State's version of events. Our supreme court found that "[w]hile the defendant's testimony about the first shot being accidental may not be wholly implausible, his testimony regarding the second and fatal shot is impossible to accept in view of the other evidence in the case." The court found that defendant had satisfied neither prong of *Strickland v. Washington*, 466 U.S. 668 (1984), which applies to ineffective assistance of counsel claims.[2] The court did, however, vacate one armed robbery conviction as well as his convictions for knowing murder and felony murder. *People v. Mack*, 105 Ill. 2d 103 (1984).

¶ 7     The United States Supreme Court then vacated that decision on other grounds (*Mack v. Illinois*, 479 U.S. 1074 (1987)), and the Illinois Supreme Court ultimately affirmed the judgment a second time (*People v. Mack*, 128 Ill. 2d 231 (1989), *cert. denied*, 493 U.S. 1093 (1990)).

¶ 8     After significant postconviction proceedings, defendant was resentenced to natural life for the intentional murder of Kolar, and nine years in prison for armed robbery.[3] During resentencing, the State had sought the death penalty on the premise that petitioner acted with the intent to kill Kolar, or acted with the knowledge that his acts created a strong probability of death or great bodily harm, in the course of an armed robbery. Defendant's new counsel, however, presented evidence supporting defendant's assertion that he shot Kolar only once, not twice, and did so accidentally.

¶ 9     Succinctly stated, defense counsel presented evidence indicating that while Kolar sustained two entrance and exit wounds, the first bullet entered and exited Kolar's body twice. In

---

[2]We note that the United States Supreme Court's landmark decision in *Strickland* was issued while defendant's direct appeal was pending.

[3]*People v. Mack*, 167 Ill. 2d 525 (1995); *People v. Mack*, 182 Ill. 2d 377 (1998), *cert. denied*, 525 U.S. 1007 (1998).

addition, the second bullet that was fired directly struck the floor without entering Kolar's body. Counsel also presented evidence that defendant could not have shot Kolar while standing over him in the manner suggested by the State. Indeed, the medical examiner, who testified for the State, essentially acknowledged that Kolar's wounds were inconsistent with that theory. The medical examiner also acknowledged that a single bullet could have caused all of Kolar's wounds. Following such evidence, the jury was unable to unanimously find that defendant was eligible for a death sentence, apparently because they could not agree that defendant intended to kill Kolar or knew that his acts created a strong possibility of death or great bodily harm.

¶ 10    Notwithstanding this new evidence and the jury's finding, the trial court imposed a life sentence on February 26, 2002.[4] Pertinent to the claim defendant now makes, a life sentence required a finding "that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9-1 of the Criminal Code of 1961 are present." Ill. Rev. Stat. 1971, ch. 38, § 1005-8-1(a)(1). In addition, the relevant aggravating factor found in section 9-1(b) required that "in performing the acts which caused the death of the murdered individual *** the defendant acted with the intent to kill the murdered individual or with the knowledge that his acts created a strong probability of death or great bodily harm to the murdered individual or another." Ill. Rev. Stat., ch. 38, § 9-1(b)(6). In imposing a life sentence, the court found that defendant's acts were brutal and heinous and that he acted with the knowledge that his conduct created a strong probability of death.

¶ 11    The reviewing court affirmed the judgment. The court found that a constitutional violation occurred under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which requires a fact that

---

[4]Defendant was resentenced by a different judge than the judge who originally presided over his trial and sentencing.

increases the penalty for a crime beyond the statutory maximum to be submitted to a jury and proved beyond a reasonable doubt. The error was harmless, however, in light of the evidence presented at trial. *People v. Mack*, No. 1-02-0961 (2004) (unpublished order under Supreme Court Rule 23). Specifically, the reviewing court found that evidence of the brutal and heinous nature of the crime was overwhelming. The court did not, however, consider the trial court's finding that a life sentence was warranted because defendant killed Kolar knowing his actions created a strong probability of death. Accordingly, the reviewing court's finding that a life sentence was appropriate rested on the brutal and heinous nature of the crime.

¶ 12    Following defendant's direct appeal, he filed a *habeas corpus* petition, again challenging his sentence under *Apprendi. Mack v. McCann*, 530 F.3d 523 (7th Cir. 2008); *Mack v. Battaglia*, 441 F. Supp. 2d 928 (N.D. Ill. 2006). The Seventh Circuit found in 2008 that defendant waived his right to have a jury determine his state of mind and that no *Apprendi* violation occurred. While a natural life sentence "founded solely on the findings of the 2001 trial court *** would violate the principle of *Apprendi*," the 1981 trial court's conclusion under the reasonable doubt standard that defendant acted intentionally and with knowledge that his acts created a strong probability of death essentially meant that no violation occurred. Thus, unlike the Illinois Appellate Court, the Seventh Circuit's finding that defendant's life sentence was appropriate rested on the intentional and knowing nature of defendant's acts, not the brutal and heinous nature of the crime.

¶ 13    That same year, defendant through private counsel, filed a "motion for leave to file a motion for summary judgment and for vacation of his conviction for intentional and knowing murder." Defendant sought, in pertinent part, to revive a postconviction claim raised prior to resentencing. Specifically, defendant's 1990 postconviction petition alleged that trial counsel's

lack of investigation led counsel to be unaware of evidence that would have bolstered defendant's assertion that the shooting was accidental. Defendant had ultimately received the aforementioned sentencing relief from that petition, but his ineffective assistance of counsel claim raised therein was not specifically addressed. More than 17 years later, defendant now urged the trial court to address it. He argued that evidence presented at resentencing *after* his postconviction petition was filed supported his claim that trial counsel failed to conduct a proper investigation.

¶ 14　The trial court denied defendant relief. On appeal, the reviewing court found that the trial court erroneously characterized the motion as a new petition filed under the Act but found that defendant's ineffective assistance of counsel claim had been abandoned. *People v. Mack*, No. 1-09-1369 (July 23, 2010) (unpublished order under Supreme Court Rule 23).

¶ 15　On May 12, 2011, defendant filed a *pro se* "Motion for Leave to File Successive Petition For Post Conviction Relief," reiterating that trial counsel was ineffective based on evidence presented at his resentencing hearing. Despite the petition's label, we note that this was actually the first postconviction petition defendant filed after resentencing, or in other words, after his "conviction." Due to the pleading's label and other content, however, the trial court treated it as a successive petition and found that defendant had failed to establish cause and prejudice.

¶ 16　We affirmed the trial court's judgment. Specifically, we rejected defendant's assertion that his sentence was void and found that the trial court's treatment of his petition as successive was invited error. Yet, appellate postconviction counsel presented no argument regarding the merits of defendant's ineffective assistance of counsel claim. *People v. Mack* , 2013 IL App (1st) 113068-U.

¶ 17    Finally, defendant filed a *pro se* petition seeking leave to file a successive petition, which is presently at issue. He argued once more that evidence presented at resentencing contradicted the State's trial theory that defendant deliberately shot Kolar twice, execution style, and fired the fatal second shot into Kolar's chest while standing over him. In addition, trial counsel was ineffective for failing to pursue such evidence. Had counsel done so, the trial court may have believed that the shooting was accidental, which would have precluded a natural life sentence.

¶ 18    On May 12, 2016, the trial court denied defendant leave to file his successive petition because his ineffective assistance of counsel claim was barred by *res judicata*. Our 2013 decision had affirmed the trial court's rejection of the same claim based on the same evidence. *People v. Mack* , 2013 IL App (1st) 113068-U. Defendant now appeals.

¶ 19                                      II. Analysis

¶ 20    On appeal, defendant asserts that he has established cause and prejudice with respect to his assertion that trial counsel was ineffective for failing to investigate evidence supporting his claim that he accidentally shot Kolar. He acknowledges that even with this new evidence, he would still be convicted of felony murder, but argues that a felony murder conviction would not have allowed the court to impose a life sentence. Rather, the maximum permissible sentence would have been 40 years in prison. See Ill. Rev. Stat. 1971, ch. 38, § 1005-8-1(a)(1); Ill. Rev. Stat., ch. 38, § 9-1(b)(6).

¶ 21    Despite the complex history that led to this appeal, the State has declined to file an appellee's brief. Thus, our review is consequently governed by *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976). Under *Talandis*, we may (1) serve as an advocate for the appellee and decide the case upon determining that justice so requires; (2) decide the merits of the case where the record is simple and the issues can be easily decided

without an appellee's brief; or (3) "reverse the trial court when the appellant's brief demonstrates *prima facie* reversible error that is supported by the record." *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009).

¶ 22     We are reluctant to act as the State's advocate in this complex case given that the State could not be bothered to act as its own advocate. See *Talandis Construction Corp.*, 63 Ill. 2d at 133 (stating that a reviewing court should not "be compelled to serve as an advocate for the appellee or that it should be required to search the record for the purpose of sustaining the judgment of the trial court"). We are more reluctant still, however, to waste judicial resources and defendant's time by reversing and remanding this case only to determine in a subsequent appeal that we are compelled to affirm based on the reasoning already employed by the trial court. Accordingly, we find that the interests of justice compel us to decide this appeal.

¶ 23     The Act constitutes a statutory mechanism for defendants to assert substantial violations of their constitutional rights in the proceedings that resulted in their convictions. *People v. Reed*, 2020 IL 124940, ¶ 18. That being said, the Act contemplates the filing of only one petition and a defendant must obtain leave of court to file a successive petition. *People v. Jackson,* 2021 IL 124818, ¶ 27. Still, the bar against filing a successive petition will be relaxed where a defendant satisfies the cause and prejudice test. *People v. Robinson*, 2020 IL 123849, ¶ 42.

¶ 24     To demonstrate cause, a "petitioner must show some objective factor external to the defense that impeded his ability to raise the claim in his initial postconviction proceeding." *Jackson,* 2021 IL 124818, ¶ 30. Cause has been defined as an objective factor external to the defense that interfered with counsel's efforts to raise the claim in a prior proceeding. *People v. Pitsonbarger*, 205 Ill. 2d 444, 460 (2002). To demonstrate prejudice, the defendant must show that the error claimed so infected his trial that the resulting conviction violated due process.

*Jackson,* 2021 IL 124818, ¶ 30. We review the denial of leave to file a successive petition *de novo*. *Robinson*, 2020 IL 123849, ¶ 39. Leave to file a successive petition should be denied when it is clear from review of the successive petition and documentation that the petitioner's claims fail as a matter of law or where supporting documentation is insufficient to warrant further proceedings. *People v. Bailey*, 2017 IL 121450, ¶ 21.

¶ 25    With respect to cause, defendant argues that "[h]is claim satisfies 'cause' because the failure to bring this claim previously was due to a fundamental deficiency in the prior post-conviction proceedings, because both of [defendant's] appointed attorneys unreasonably failed to argue the merits of this claim, and this was not Mack's fault." Defendant disregards, however, that he *did* bring this claim in his initial 2011 petition and the trial court denied it, regardless of whether counsel presented further argument thereon or whether the trial court and appellate court directly addressed it.

¶ 26    Our supreme court has held that "the post-conviction process does not provide a forum by which a defendant may challenge the conduct of counsel at an earlier post-conviction proceeding." *People v. Szabo*, 186 Ill. 2d 19, 26 (1998). This is because there is no constitutional right to postconviction counsel and, consequently, a challenge to postconviction counsel could never constitute a constitutional claim, as required under the Act. *People v. Cotto*, 2016 IL 119006, ¶ 29. Furthermore, "attorney error short of ineffective assistance of counsel does not constitute cause." *People v. Flores*, 153 Ill. 2d 264, 273 (1992). Even assuming that postconviction counsel's abandonment of defendant's claim was deficient and unreasonable, supreme court precedent makes clear that this does not establish "ineffective assistance" or cause. See *People v. Custer*, 2019 IL 123339, ¶ 30 (stating that postconviction defendants "have no constitutional right to counsel, effective or otherwise"); but see *People v. Nicholas,* 2013 IL

App (1st) 103202, ¶¶ 45-46 (stating that "to determine whether defendant can establish cause by arguing a deficiency in the prior proceedings in this case, we must determine whether postconviction appellate counsel provided effective assistance" pursuant to *Strickland* and that the defendant established cause because "postconviction appellate counsel's failure to raise defendant's claims on appeal was unreasonable").[5]

¶ 27    The doctrine of *res judicata* also defeats defendant's ability to raise this claim in his successive petition. Specifically, *res judicata* applies following a final judgment on the merits by a court of competent jurisdiction that involves the same parties and cause of action. *People v. Kines*, 2015 IL App (2d) 140518, ¶ 21. In addition, *res judicata* and cause appear to be two sides of the same coin, as our supreme court has found that it applies to a ruling on claims that were or could have been raised in a defendant's initial postconviction petition and that *res judicata* defeats the cause prong. *People v. Guerro,* 2012 IL 112020, ¶¶ 16- 17; see also *People v. Tenner*, 206 Ill. 2d 381, 399 (2002) (J. Freeman, specially concurring) (finding that "[a]n issue that was previously litigated and is raised anew in a successive proceeding can never fall under the ambit of the cause and prejudice test because the issue had, indeed, been raised in the earlier proceeding"). Yet, our supreme court has also stated that an otherwise meritorious claim has no basis in law if *res judicata* applies. *People v. Alcozar*, 241 Ill. 2d 248, 258  (2010); *People v. Blair*, 215 Ill. 2d 427, 445 (2005). This would suggest that *res judicata* defeats the prejudice prong as well. See *Id.* at 447 (finding *res judicata* to be an appropriate basis for first-stage dismissal as it necessarily renders a petition for frivolous and patently without merit).

---

[5]While not contained in the language of the Act (725 ILCS 5/ 122-1(f) (West 2004)), our supreme court has also repeatedly defined cause as an objective factor "external to the defense." *Jackson,* 2021 IL 124818, ¶ 30; *Tenner*, 206 Ill. 2d at 393. Postconviction appellate counsel's decision not to pursue that claim cannot be said to satisfy that requirement.

¶ 28    Here, defendant's 2011 ineffective assistance of counsel claim was dismissed by the trial court, a court of competent jurisdiction. Not only were the parties the same, but the evidence and cause of action were too. *Res judicata* clearly applies and defeats defendant's ability to satisfy the cause and prejudice test. *People v. Davis*, 2014 IL 115595, ¶ 45 (finding *res judicata* barred the claim raised in the defendant's successive postconviction petition where the claim was already ruled on during his initial postconviction proceeding).

¶ 29    We would be remiss not to acknowledge that *res judicata* is an equitable doctrine and may be relaxed where justice so requires. *People v. Cathey*, 2019 IL App (1st) 153118, ¶ 21; *People v. Lapointe*, 2018 IL App (2d) 160432 ,¶ 22. Confusingly, our supreme, at least in the context of an initial postconviction petition, has defined the fundamental fairness exception to *res judicata*  "in terms of the cause-and prejudice test." *Pitsonbarger*, 205 Ill. 2d at 458. Thus, it would seem that *res judicata* defeats the cause and prejudice test and the cause and prejudice test can defeat *res judicata*. We have come full circle.

¶ 30    In any event, we do not find any well-established exception to *res judicata* that would permit us to relax this doctrine here. *Cf. People v. Whitehead*, 169 Ill. 2d 355, 372 (1996), *overruled on other grounds by People v. Coleman*, 183 Ill. 2d 366 (1998) (finding that an exception to the waiver rule in postconviction petition petitions where waiver steams from the ineffectiveness of counsel on direct appeal); *Kines*, 2015 IL App (2d) 140518, ¶ 22  (finding that the defendant's claim fell within an established exception to *res judicata* that applies when the judgment in the first action was clearly inconsistent with the equitable implementation of a statutory scheme); *People v. Weathers,* 2015 IL App (1st) 133264, ¶ 35 (finding the defendant established cause where newly discovered evidence was not available to the defendant at the time of his prior petitions); *Nicholas,* 2013 IL App (1st)103202, ¶¶ 42-43 (finding the defendant

established cause and prejudice where the defendant's initial petition was unable to set forth the name of an abusive detective).

¶ 31    Defendant essentially argues that procedural anomalies and the decisions of counsel have permitted the thrust of his ineffective assistance of counsel claim to repeatedly evade a thorough review by this court. Yet, we lack the supervisory authority of our supreme court. *People v. Whitfield*, 228 Ill. 2d 508, 521 (2007) (stating that the supreme court's supervisory authority extends to the procedural administration of the courts and the application of law). We find no authority to overcome the strictures of the Act and *res judicata*. Accordingly, we must affirm the trial court's judgment.

¶ 32                                III. Conclusion

¶ 33    While *this* court did not previously rule on the merits of this specific claim during defendant's initial postconviction proceedings, the trial court did. We must affirm the denial of leave to file a successive petition.

¶ 34    Affirmed.